# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| BEVERLY A. MINER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. CIV-10-345-SPS |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

The claimant Beverly A. Miner requests judicial review of the decision of the Commissioner of the Social Security Administration denying her application for benefits under the Social Security Act pursuant to 42 U.S.C. § 405(g).  The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining that she was not disabled. As discussed below, the Commissioner's decision is REVERSED and the case is REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A).  Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id.* §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born on July 13, 1958, and was fifty years old at the time of the administrative hearing. She graduated from high school, attended two years of college and one year of vocational school (Tr. 24), and has past relevant work as an LPN (Tr. 19). The claimant alleges she has been unable to work since July 21, 2006, because of type I diabetes, plantar fasciitis, retinopathy, neuropathy, and hyperlipidemia (Tr. 120).

### Procedural History

On May 14, 2007, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Her application was denied. ALJ Lantz McClain conducted an administrative hearing and determined the claimant was not disabled in a decision dated June 25, 2009. The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had severe impairments of hypertension, diabetes, peripheral neuropathy, and obesity but found that the claimant retained the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. 404.1567(a), *i. e.*, she could lift/carry

up to 10 pounds frequently, stand and/or walk for at least 2 hours in an 8 hour work day, and sit for 6 of 8 hours in a work day, but should avoid hazards such as heights and open machinery (Tr. 16). The ALJ concluded that although the claimant could not return to any of her past relevant work, she was nevertheless not disabled because she could perform other work in the national economy, *i. e.*, hospital admitting clerk and hospital collections clerk. (Tr. 19-20).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly discuss all of her impairments, severe or otherwise, at steps two and three; (ii) by failing to pose a proper hypothetical question including all of her impairments to the vocational expert at the administrative hearing; (iii) by failing to properly consider and weigh medical evidence of record, *i. e.*, the opinion of her treating physician, Dr. Donald E. Stucky, M.D.; and, (iv) by failing to perform a proper credibility analysis. The Court finds that the ALJ *did* fail to properly analyze Dr. Stucky's opinion, and the decision of the Commissioner must therefore be reversed.

The claimant testified at the administrative hearing that she was diagnosed in 1971 with Type I diabetes, which is uncontrolled (Tr. 25-26). She stated that she tests her blood sugar two-three times per day and spends "[a]t least a couple of hours" daily dealing with diabetes-related issues (Tr. 26). The claimant testified that due to her condition, she suffers from adverse reactions, which causes her to have seizures two-three times per week (Tr. 26). The claimant testified that most of the time, her seizures are

unpredictable, and that during these seizures, her "blood sugar can drop from 200 to 20 in a matter of minutes" causing her to black out, fall, and convulse, which often results in "bruises and scars from hitting things and breaking thinks while [she is] out" (Tr. 26). The claimant testified that she was let go because of her health from her last job, which was at Allied Home Health in 2006 and lasted for only two-and-a-half months, and specifically noted the diabetes-related reactions, saying that her employer was "afraid that the job was too much for [her] and was causing [her] reactions" (Tr. 27). The claimant testified that following an adverse diabetic reaction, she is "weak and tired for at least a day, sometimes two depending on how strong the reaction was" (Tr. 31). The claimant also stated that her doctors had tried "everything" to get her diabetes under control since 2006 to no avail (Tr. 27). She stated that she has neuropathy in her hands and feet, which causes tingling, numbness, and severe pain (Tr. 28, 30).

The claimant submitted five Seizure Description Forms completed by friends and family (Tr. 152-58, 160). The first form was completed by Barbara J. Neal, claimant's sister, who has witnessed claimant experience ten or more seizures. Ms. Neal wrote that claimant sweats profusely, becomes cold and clammy, and her eyes appear glassy or glazed over during her seizures (Tr. 152). Ms. Neal also wrote that the claimant's recovery time depends on how quickly she is able to ingest glucose (Tr. 152). Shelly Downs (a friend of the claimant) also completed a form, which indicated that she had witnessed claimant's seizures on 8-10 occasions, and wrote that she has observed claimant blacking out and falling down, rigidity and jerking in her arms, and soiling

herself during these seizures (Tr. 153).  Shannon Baker (another friend) noted that the claimant is unable to control herself, becomes disoriented, and sometimes falls when she is experiencing seizures (Tr. 154).  Baker also wrote that claimant is usually "wiped out" following a seizure (Tr. 154).  The claimant's mother, Lois Justice, wrote that claimant falls, becomes unresponsive, yells, and laughs uncontrollably when she experiences seizures, and that claimant has injured herself during her seizures repeatedly (Tr. 155-56). Finally, Janice Blackwell, the claimant's daughter, wrote in her completed form that claimant makes no sense when she talks and becomes uncontrollable during her seizures (Tr. 160).  Ms. Blackwell also wrote that the claimant has injured herself many times during seizures, that her recovery depends on how quickly she eats, and that she is very tired for several hours following a seizure (Tr. 160-61).

The claimant contends, *inter alia*, that the ALJ failed to perform a proper analysis of the opinion of her treating physician Dr. Stucky.  As the ALJ noted, medical opinions from a treating physician such as Dr. Stucky are entitled to controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record."  *Langley v. Barnhart,* 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003).  When a treating physician's opinions are not entitled to controlling weight, the ALJ must determine the proper weight to which they are entitled by analyzing all of the factors set forth in 20 C.F.R. § 404.1527.  *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical

opinions are still entitled to deference and must be weighed using all of the factors provided in § [404.1527].'"), *quoting Watkins,* 350 F.3d at 1300 [emphasis added]. The applicable factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) any other factors that tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). And if the ALJ decides to reject a treating physician's opinions entirely, he is required to "give specific, legitimate reasons for doing so." *Id.* at 1301 [quotations omitted]. In sum, it must be "clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight." *Id.* at 1300.

      The ALJ noted Dr. Stucky's conclusion that the claimant was "100% disabled" but asserted there was "no objective evidence to support Dr. Stucky's opinion." The ALJ concluded that the opinion could not "be given controlling weight because it is in conflict with Dr. Stucky's own treatment records and inconsistent with the other substantial evidence" (Tr. 18-19). The ALJ did not specify the weight he actually was assigning to Dr. Stucky's opinion (presumably it was no weight whatever) or discuss any of the other opinions expressed by Dr. Stucky about the claimant's functional limitations (as opposed

to the ultimate question of disability), *e. g.*, his characterization of the claimant's diabetes as "more brittle over the past several years, particularly within the past year" and his observation that the claimant's "brittle sugar control causes frequent insulin reactions" (Tr. 18).

The ALJ was clearly not required to afford controlling weight to Dr. Stucky's opinion that the claimant was "100% disabled." *See, e. g.,* 20 C.F.R. § 404.1527(e) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). But the ALJ nevertheless *was* required to analyze any opinions about the claimant's functional limitations expressed by Dr. Stucky for controlling weight, and he was required to analyze the appropriate weight to give *any opinion* expressed by Dr. Stucky not entitled to controlling weight by applying all of the *Watkins* factors. *See Langley,* 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, [t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in § 404.1527."), *quoting Watkins,* 350 F.3d at 1300. *See also Miller v. Barnhart,* 43 Fed. Appx. 200, 204 (10th Cir. 2002) ("The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner."). Thus, the ALJ failed to complete his analysis of Dr. Stucky's opinions.

Because the ALJ failed to properly analyze the opinions of the claimant's treating physician Dr. Stucky, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis.  If such analysis results in any adjustments to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the decision of the Commissioner is therefore not supported by substantial evidence.  Accordingly, the decision of the Commissioner is hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 30th day of September, 2011.

_____
Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma